IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

WAGGIN' TRAIN, LLC,

    Plaintiff,

v.                                                               No. 1:09-cv-01093

NORMERICA, INC. and NORTHDOWN
INDUSTRIES, INC.,

    Defendants.

_____

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
COUNT V OF THE COMPLAINT**
_____

    Plaintiff, Waggin' Train, LLC, filed suit against Defendants, Normerica, Inc. and Northdown Industries, Inc., on April 15, 2009. Pending before the Court is the Defendants' Motion to Dismiss Count V of the Complaint (Docket Entry ("D.E.") No. 67), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to which the Plaintiff has responded (D.E. No. 80). For the reasons set forth hereinafter, the Court **GRANTS** the Defendants' motion.

FACTUAL BACKGROUND

    Waggin' Train, LLC ("Waggin' Train") is a Delaware company with its principal place of business in Anderson, South Carolina. (D.E. No. 57, Amended Complaint, ¶ 8.) Normerica, Inc. is a Canadian company, and is the parent company of Northdown, Inc., another Delaware company with its principal place of business in Dyersburg, Tennessee. (Id. at ¶¶ 9-10.) The Defendants (collectively "Normerica") "function and represent themselves to the world as a single entity and are joint operators concerning the matters alleged" in the complaint—"[t]o

industry competitors and the buying public, Defendants are indistinguishable." (Id. at ¶ 18.) Plaintiff and Normerica both are manufacturers of pet-related products, although Waggin' Train's share of the market with respect to pet treats is considerably larger than Defendant's. (Id. at ¶¶ 2, 19.) Plaintiff distributes its products—specifically its pet treats—to "dozens of major retailers throughout the United States, Canada, and Australia." (Id. at ¶ 2.)

Waggin' Train alleges that Normerica has engaged in an "ongoing and organized campaign" to increase its market share and gain an advantage over Waggin' Train by publishing "highly inflammatory, false, and misleading information to at least two of Waggin' Train's most valuable customers, the retailers Costco Wholesale Corporation and Sam's Club." (Id. at ¶ 3.) In particular, Plaintiff contends Normerica has been claiming to retailers that Waggin' Train's Chicken and Duck Jerky Tenders contain diethylene glycol and propylene glycol, two compounds that, if present in its products, could be harmful to pets (and thereby to Waggin' Train's business and reputation). (Id. at ¶ 4.) Normerica also allegedly gave misinformation to retailers about the level and quality of glycerin in Waggin' Train's products. (Id. at ¶¶ 5-6, 21.) The spreading of this misinformation has created "an unfounded health scare." (Id. at ¶ 20.) Waggin' Train claims that these actions have subjected it to "potential harm" in the form of reputational and financial damage and loss of market share. (Id. at ¶¶ 37-41.)

As a result, Plaintiff brought this lawsuit against the Defendants, asserting causes of action for false advertising, intentional interference with business relationships, defamation/product disparagement, unfair competition, and unfair/deceptive practices in violation of the Tennessee Consumer Protection Act ("TCPA"). (Id. at ¶¶ 42-59.) The instant motion by the Defendants, however, seeks only to dismiss the TCPA claim.

STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6) permits dismissal of a plaintiff's lawsuit when it fails to state a claim upon which relief can be granted. In order for an asserted cause of action to survive a motion to dismiss under Rule 12(b)(6), it need not necessarily be pleaded with "detailed factual allegations, [but must] provide the 'grounds' of [plaintiff's] 'entitle[ment] to relief' [with] more than labels [or] conclusions and a formulaic recitation of the elements of a cause of action.. . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). Factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Id. at 555-56 (citations omitted). The key inquiry is whether the facts in the complaint set out "a claim to relief that is plausible on its face." Id. at 570; *see also* Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986 (W.D. Tenn. 2009) (discussing the "plausibility standard").

When considering a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Twombly, 550 U.S. at 556 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). Naturally, the type and specificity of the facts that must be pleaded to

3

generate a plausible claim will vary depending on the elements of the cause of action asserted and the circumstances surrounding the litigation. *See* United States *ex rel.* Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 502 n.6 (6th Cir. 2008) (noting that the requirement to plead particular facts may be especially important in "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation"); *compare* Twombly, 550 U.S. at 564-69 (conducting a Rule 12(b)(6) analysis in a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act), *with* Erickson, 551 U.S. at 93-94 (analyzing a prisoner's pro se § 1983 civil rights claim). As the United States Supreme Court has noted, "facial plausibility" is a "context-specific task" that requires a district court to "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

ANALYSIS

The TCPA prohibits "[u]nfair or deceptive acts or practices," and a private right of action to recover actual damages is available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part . . .." Tenn. Code Ann. §§ 47-18-104(a), 109(a)(1). Tennessee courts have interpreted the TCPA as imposing two distinct proof obligations on a plaintiff seeking to establish a cause of action: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated....' " Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-

4

109(a)(1)). A plaintiff need not prove that the defendant's conduct was willful, but if it was, the TCPA allows the trial judge to award treble damages. Tucker, 180 S.W.3d at 115-16 (internal citations omitted).The TCPA is much broader in scope than common-law fraud because it "applies to any act or practice that is unfair or deceptive to consumers." Id. at 115. The TCPA outlaws a list of specific actions, and Waggin' Train claims that Normerica has violated three of these prohibitions:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
>
> . . .
>
> (8) Disparaging the goods, services or business of another by false or misleading representations of fact; and
>
> . . .
>
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person.[1]

Tenn. Code Ann. § 47-18-104(b).

Normerica's primary objection to the TCPA claim is that Plaintiff has alleged only that the Defendants have engaged in anticompetitive conduct, which is not actionable under the TCPA. (D.E. No. 67, Motion to Dismiss, p. 4.) If Normerica is correct, Waggin' Train would be unable to establish the first element of the TCPA prima facie case. Tucker, 180 S.W.3d at 115. Indeed, Tennessee decisions, analyzing the legislative history of the TCPA and comparing it to similar statutes in other states, seem to support Normerica's contention that anticompetitive

---

[1] This subsection is the TCPA's "catch-all" provision. See Fleming v. Murphy, 2007 WL 2050930, at *7 (Tenn. Ct. App. 2007).

conduct, standing alone, cannot be the predicate for a TCPA claim. *See, e.g.*, Bennett v. Visa U.S.A., Inc., 198 S.W.3d 747, 753-55 (Tenn. Ct. App. 2006) (noting that the Tennessee General Assembly deliberately omitted from the TCPA any mention of "unfair methods of competition in or affecting commerce"); Sherwood v. Microsoft Corp., 2003 WL 21780975, at *31-*34 (Tenn. Ct. App. 2003) (same, finding that "claims based upon anticompetitive conduct are not cognizable under the TCPA").

For its part, the Plaintiff disputes the Defendants' interpretation of its TCPA allegations as being based only on anticompetitive conduct, denigrating as myopic Normerica's "tortured view of [this lawsuit] as an antitrust action. . .." (D.E. No. 80, Response to Motion to Dismiss, p. 4.) Nevertheless, the Court need not decide whether Waggin' Train's TCPA claim is based solely upon anticompetitive conduct, because the complaint is devoid of any allegations that Normerica's conduct has caused Waggin' Train to suffer an "ascertainable loss of money or property" as set forth in Tenn. Code Ann. § 47-18-109(a)(1).[2] As a result, Waggin' Train's TCPA claim fails because of its inability to establish a prima facie case.

There are few Tennessee cases discussing the scope of "ascertainable loss" that is actionable under Tenn. Code Ann. § 47-18-109(a)(1). However, the language of the statute itself is unambiguous in requiring a plaintiff to claim "actual damages" in the form of a loss of "money or property . . . or any other article, commodity, or thing of value. . .." Tenn. Code Ann. § 47-18-

---

[2] Normerica briefly notes this fact, almost in passing, at the close of its "Statement of Facts," although it does not argue explicitly that Waggin' Train has failed to allege the requisite injury. (D.E. No. 67, Motion to Dismiss, p. 3.)

109(a)(1).³ Moreover, the Tennessee Court of Appeals in Tucker, in discussing the "unfairness" requirement of the TCPA, stated that the alleged injury must be "substantial": "[t]o be considered 'substantial,' consumer injury *must be more than trivial or speculative*." Tucker, 180 S.W.3d at 117 (emphasis added; internal citations omitted). Thus, it is evident from the language of the statute that to establish a TCPA claim, a plaintiff must demonstrate that it actually has suffered damages that are more than conjectural, and that emanate from the defendant's unfair or deceptive actions.

Waggin' Train simply has not presented any facts tending to show that it has suffered or is suffering the type of loss described by the statute—or that it has suffered any loss whatsoever. The complaint contains no shortage of allegations of the dire straits in which Plaintiff *potentially* could find itself as a result of Defendants' conduct:

> [T]he damage to Waggin' Train *will be incalculable if* Defendants' campaign of misinformation is not enjoined. (D.E. No. 57, Amended Complaint, ¶ 38) (emphasis added).
>
> *If* Waggin' Train loses [its Canadian import] license as a result of Defendants' malicious false and/or misleading allegations, Waggin' Train *would lose* its entire dog treat business in Canada. (Id.) (emphasis added).
>
> Defendants' statements . . . *are intended to disparage and damage* Waggin' Train. (Id. at ¶ 39) (emphasis added).
>
> The *threat* to Waggin' Train is particularly acute in the case of the "big box " retailers . . . *If* a company receives enough potentially troubling information about a particular product—even if the information turns out to be false, it has its own business interest in keeping such product from [sic] the shelves. (Id. at ¶ 40) (emphasis

---

³    Because of the specificity it requires in terms of the type of loss a plaintiff must allege, the TCPA differs from similar statutes in other states. *See, e.g.*, Va. Code Ann. § 59.1-204(A) (requiring a plaintiff claiming injury under the Virginia Consumer Protection Act to demonstrate only that it has suffered "loss" as a result of the violation); Ga. Code Ann. § 10-1-399(a) (providing for a civil cause of action under Georgia's Fair Business Practices Act to "[a]ny person who suffers injury or damages").

7

>added).

>And *if even one retailer of any description severed its relationship* with Waggin' Train out of fear that its products contain [harmful substances], Waggin' Train *could face* a domino effect. (Id. at ¶ 41) (emphasis added).

Even the heading of the section of the complaint detailing Waggin' Train's damages reads, "The *Potential* Harm to Waggin' Train From Defendants' Tortious Conduct." (Id. at p. 12) (emphasis added). However, despite these warnings of harms that could befall the Plaintiff, the complaint is bereft of any allegations that Waggin' Train actually has suffered any ascertainable loss, either tangible or intangible. Without such a showing, the Plaintiff cannot make out a prima facie case under the TCPA.

Notwithstanding the foregoing, Plaintiff notes that each cause of action in its complaint concludes with the statement, "Waggin' Train has suffered injury to its reputation and business," and from this, it reasons that "[a]s may be expected, [Defendants'] conduct has caused Waggin' Train to suffer [an] 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value.' " (D.E. No. 80, Response to Motion to Dismiss, pp. 5-6) (quoting Tenn. Code Ann. § 47-18-109(a)(1)); (D.E. No. 57, Amended Complaint, ¶¶ 44, 49, 53, and 56.) In other words, Waggin' Train claims that it already has suffered injury to its reputation, which, it submits, is actionable under the TCPA. These claims of injury, however, are supported by no factual allegations in the complaint—Plaintiff does not explain how its reputation has been damaged, or in what ways such damage has manifested itself—hence, they are merely conclusory. *See* Wilson v. Hofbauer, 113 F. App'x 651, 653 (6th Cir. 2004) ("wholly conclusory allegations are insufficient to state a cognizable claim for relief") (citing Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)).

Furthermore, even if the allegations of harm were more than conclusory, no Tennessee authority has been cited holding that reputational injury, without more, is a sufficient basis for a TCPA claim. Plaintiff avers that reputational harm is indeed actionable as an "unfair or deceptive act or practice," claiming to draw support for this proposition from Wolfe v. MBNA America Bank, 485 F. Supp. 2d 874 (W.D. Tenn. 2007). However, despite Waggin' Train's contention to the contrary, the plaintiff in Wolfe complained not only of damage to his reputation, but also of identity theft and adverse effects on his credit. In any event, the Wolfe court did not specifically consider whether the plaintiff had alleged actionable injury under the TCPA, nor did its disposition of the plaintiff's claims turn on that issue. Id. at 878-79, 889-92. Thus, Wolfe does not support Plaintiff's position that "damage to name and reputation" standing alone is a sufficient foundation for a TCPA claim. (D.E. No. 80, Response to Motion to Dismiss, p. 6); *see also* Tucker, 180 S.W.3d at 117 (the type of "[s]ubstantial injury" required to establish a prima facie TCPA claim "usually involves monetary injury or unwarranted health and safety risks").

Nor does Waggin' Train benefit from TCPA § 109(b),[4] which authorizes the Court "to enjoin the person who has violated, is violating, or who is otherwise likely to violate" the TCPA. Tenn. Code Ann. § 47-18-109(b). While it is true that this section permits the Court to enjoin conduct prospectively, it does not authorize courts to enjoin activities that the TCPA does not proscribe. As explained *supra*, Plaintiff's allegations that it has suffered or will suffer

---

[4] Plaintiff does not explicitly request injunctive relief pursuant to § 109(b).Instead, it seeks "the relief and damages specified in Tenn. Code Ann. §§ 47-18-108 and 47-18-109." (D.E. No. 57, Amended Complaint, pp. 16-17.) In its complaint, Waggin' Train does request injunctive relief in the specific context of its defamation contention, but not with respect to its TCPA claim. (Id. ¶ 6) (asking the Court "to enjoin Defendants' libelous campaign"). However, the Court addresses the possibility of an injunction because it is among the types of remedies available under § 47-18-109.

9

reputational injury as a result of the Defendants' actions do not set forth a cognizable claim under the TCPA. Moreover, aside from its aforementioned speculative claims about nebulous consequences that may or may not result from the Defendants' activities, Plaintiff has not alleged that it is in immediate danger of suffering any harm that would qualify as an "ascertainable loss of money or property" under the TCPA. Tenn. Code Ann. § 47-18-109(a)(1). Speculative harms are insufficient as a matter of law to form the basis for injunctive relief. Injunctions "will not issue merely to relieve the fears or apprehensions of an applicant.. . . [A]n injunction will not be granted to prevent an injury where that injury was eventual, remote, contingent—where it may never accrue." Nashville, C. & St. L. Ry. v. Railroad & Public Utilities Comm'n, 32 S.W.2d 1043, 1045 (Tenn. 1930), *cited by* Bivens v. Ballenger, 1990 WL 182256, at *4 (Tenn. Ct. App. 1990) and State *ex rel* Cunningham v. Feezell, 400 S.W.2d 716, 719 (Tenn. 1966)); *see also* Greeneville Cabinet Co. v. Hauff, 273 S.W.2d 9, 10 (Tenn. 1954) (noting that "damages that are remote, speculative, or contingent" do not provide sufficient grounds for injunctive relief) (internal citations and quotation marks omitted). Thus, the complaint sets forth no basis upon which Waggin' Train is entitled to injunctive relief under TCPA § 109(b).

Therefore, Plaintiff has failed to state a claim for relief under the TCPA as a matter of law.

CONCLUSION

For the reasons set forth hereinbefore, the Court **GRANTS** Defendants' Motion to Dismiss Count V of the Complaint.

**IT IS SO ORDERED** this, the 8th day of January, 2010.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE